## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| CITY OF FORT LAUDERDALE POLICE AND FIREFIGHTERS' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PEGASYSTEMS INC., ALAN TREFLER, and KENNETH STILLWELL,<br><br>Defendants. | Case No. 1:22-cv-00578-LMB-IDD<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

General Retirement System of the City of Detroit ("Detroit GRS") respectfully submits this memorandum of law in support of its motion for the entry of an order: (i) appointing Detroit GRS as Lead Plaintiff for the class pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (ii) approving Detroit GRS's selection of Abraham, Fruchter & Twersky, LLP ("AF&T") as Lead Counsel and Butler Curwood PLC ("Butler Curwood") as Local Counsel for the putative class; and (iii) such other relief as the Court may deem to be just and proper.

## I.    PRELIMINARY STATEMENT

The above-captioned securities class action was filed on May 19, 2022, on behalf of all purchasers of Pegasystems Inc. ("PEGA" or the "Company") common stock between May 29,

2020 and May 9, 2022, inclusive (the "Class Period"), seeking to pursue remedies under the Exchange Act.

The PSLRA directs courts to appoint as lead plaintiff the class member it "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Here, Detroit GRS should be appointed as lead plaintiff because it: (1) timely filed its motion; (2) it has a substantial financial interest in the outcome of this litigation; and (3) will typically and adequately represent the class's interests. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). As a sophisticated institutional investor, Detroit GRS is the prototypical lead plaintiff envisioned by Congress to serve as lead plaintiff under the PSLRA, and its appointment would therefore fulfill this critical legislative purpose. In addition, Detroit GRS's selection of AF&T to serve as lead counsel should be approved because the firm possesses extensive experience prosecuting securities class actions and will adequately represent the interests of all class members. *See* 15 U.S.C. § 78u-41(a)(3)(B)(v). For these reasons, and those enumerated below, this Court should grant Detroit GRS's motion for appointment as lead plaintiff and approve its selection of counsel.

## II.   FACTUAL BACKGROUND

As alleged, PEGA develops customer relationship management ("CRM") software. The CRM software industry is extremely competitive. As such, PEGA consistently warned in its SEC filings that the "market for our offerings is intensely competitive, rapidly changing, and highly fragmented" and that PEGA was subject to "significant competition" from other technology vendors.

The complaint alleges that the Defendants misrepresented and/or failed to disclose that: (1) PEGA had engaged in corporate espionage and misappropriation of trade secrets to better compete against Appian Corporation ("Appian"), a principal competitor; (2) Defendants' product

development and associated success was, in significant part, not the result of its own research and product testing but rather the result of such corporate espionage and trade secret theft; (3) Defendants had engaged in a scheme to steal Appian trade secrets, which was not only known to, but carried out through, the personal involvement of the Company's chief executive officer ("CEO"); (4) the Company's CEO and other officers and employees did not comply with the Company's written Code of Conduct, including its express prohibition on "stealing" confidential information from a competitor and "misrepresenting your identity in hopes of obtaining confidential information"; (5) the Company was "unable to reasonably estimate damages" in the Appian Litigation; and (6) as a result of the foregoing, Defendants' statements about PEGA's business, operations, prospects, legal compliance, and potential damages exposure in the Appian Litigation were materially false and/or misleading and/or lacked a reasonable basis when made.

On May 29, 2020, Appian Corp. ("Appian") filed a civil action against PEGA and Youyong Zou ("Zou") in the Circuit Court for Fairfax County, Virginia, captioned *Appian Corp. v. Pegasystems Inc. & Youyong Zou*, for trade secret misappropriation, violation of the Virginia Computer Crimes Act, tortious interference, and statutory business and common law conspiracy. Specifically, Appian alleged efforts by PEGA to obtain and use Appian trade secrets through Zou, who worked on a federal program involving Appian and had access to Appian's software and documentation.

During the seven-week jury trial, Appian presented substantial evidence that PEGA utilized Appian's trade secrets to improve the ease of use, social capabilities, and mobile capabilities of the PEGA platform. Appian also supplied evidence showing PEGA referred to the misappropriation internally as "Project Crush," which involved PEGA paying Zou from 2012 to 2014, and that Zou was referred to as a "spy" internally at PEGA. Appian further provided

evidence demonstrating Zou made video recordings of the Appian development environment so the PEGA could compile the competitive intelligence. Notably, when testifying under oath, defendant Trefler, PEGA's founder and CEO, conceded that he knew all about the blatantly improper and illegal tactics, knew that it was inappropriate for PEGA to have hired Zou, and knew that Zou had engaged in unauthorized activities.

On May 9, 2022, PEGA filed a Current Report on Form 8-K revealing that the Virginia circuit court jury had awarded Appian more than $2 billion for PEGA's trade secret misappropriation. On this news, PEGA's stock price dropped from $65.93 per share on May 9, 2022 to a closing of price of $52.25 per share on May 10, 2022, a one-day decline of 21% that wiped out over $1 billion in market capitalization. PEGA's stock price dropped another 8% to close at $48.07 per share the following day, representing a two-day decline of 27%.

## III.   ARGUMENT

### A.   Detroit GRS is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

- 4 -

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Detroit GRS meets each of these requirements and should be appointed lead plaintiff.

### 1.    Detroit GRS' Motion is Timely

The statutory notice in this case was published on May 19, 2022, on *GlobeNewswire* advising class members of the pendency of the action, its alleged claims, its class definition, and the option of moving the Court to be appointed as lead plaintiff no later than July 18, 2022, *i.e.*, within 60 days of the commencement of this case.  *See* Declaration of Paul M. Falabella in Support of Motion of the General Retirement System of the City of Detroit for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, Ex. A ("Falabella Decl.").  Accordingly, Detroit GRS's Motion was filed by the statutory deadline is therefore timely.

### 2.    Detroit GRS Believes It Has the Largest Financial Interest in the Relief Sought by the Class

As evidenced by the PSLRA Certification submitted herewith, Detroit GRS suffered a significant loss as a result of the Company's alleged violations of the federal securities laws.  *See* Falabella Decl., Ex. B.  Therefore, Detroit GRS has a substantial financial interest in the relief sought by the class.  To the best of Detroit GRS's knowledge, no other investor has suffered greater a loss.

### 3.    Detroit GRS Otherwise Satisfies the Typicality and Adequacy Requirements of Rule 23

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  In assessing whether the plaintiff suffering the largest financial loss meets the other requirements of Rule 23, "the candidate must make at least a preliminary showing that it has claims which are typical of those of the putative class and that it has the capacity

- 5 -

to provide adequate representation for others." *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 250 (E.D. Va. 1999). Here, Detroit GRS easily satisfies those requirements.

### (a)      Detroit GRS's Claims Are Typical

"A person's claim is typical when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000) (citation omitted). Detroit satisfies the typicality requirement because its claims arise from the same alleged misconduct and are based on the same legal theory as the claims of other class members. Similar to all other class members, Detroit GRS: (1) purchased PEGA common stock during the Class Period; (2) was adversely affected by the alleged false and misleading statements and omissions; and (3) suffered damages thereby. Accordingly, Detroit GRS's claims arise from the same alleged misconduct and are based on the same legal theory as the claims of other class members. Thus, Detroit GRS's claims are typical of the class.

### (b)      Detroit GRS Will Adequately Represent the Class

Detroit GRS also meets the adequacy requirement of Rule 23. "[A] person may be an adequate representative of the class where that person (i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *MicroStrategy*, 110 F. Supp. 2d at 435-36.

Detroit GRS's interests are aligned with those of other class members given that each class member's theory of securities fraud is fundamentally the same. Detroit GRS has also demonstrated its adequacy by signing a sworn Certification affirming its willingness to serve as, and to assume the responsibilities of, class representative. *See* Falabella Decl., Ex. B. Detroit GRS has also demonstrated its adequacy through the selection of AF&T to serve as lead counsel. As discussed

more fully below, AF&T is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to prosecute complex securities class action litigation.

In addition to satisfying the typicality and adequacy requirements of Rule 23,  Detroit GRS is also the prototypical investor Congress sought to encourage to lead securities class actions. H.R. Rep. No. 104-369, at 34, reprinted in 1995 U.S.C.C.A.N. at 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

### B.    The Court Should Approve Detroit GRS's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  *See* 15 U.S.C. § 77u-4(a)(3)(B)(v).  The Court should approve Detroit GRS's choice of AF&T to serve as Lead Counsel.

AF&T is highly skilled and knowledgeable in litigating securities fraud class actions which will enable it to prosecute this action effectively and expeditiously.   AF&T is among the preeminent securities class action law firms in the country, with the skill and knowledge that will enable it to prosecute this action effectively and expeditiously.  AF&T has successfully prosecuted numerous securities fraud class actions nationwide.  *See, e.g.*, *In re Peregrine Systems, Inc. Securities Litigation*, No. 02- CV-0870-BEN (RBB) (S.D. Cal.) (AF&T, as co-lead counsel, obtained a settlement of approximately $117.5 million); *see also Brown v. China Integrated Energy, Inc*., No. CV 11-02559-BRO (PLAx) (C.D. Cal.).  For instance, in *Pyramid Holdings, Inc. v. Terraform Global, Inc. et al.*AF&T was appointed sole lead counsel for the class and secured a $48.75 million settlement representing more than 50% of likely recoverable damages based upon

rulings in a related multi-district litigation.  This is one of many successful recoveries achieved by AF&T as a lead counsel in securities fraud class actions.  *See also Godinez v. Alere Inc., et al.*, No. 1:16-cv-10766 (PBS), ECF No. 152 (D. Mass. Dec. 22, 2017) (AF&T, as co-lead counsel, achieved a $20 million settlement); *Citiline Holdings, Inc. v. iStar Financial, Inc.*, No. 08-cv-3612-RWS (S.D.N.Y) (AF&T as co-lead counsel obtained a $29 million settlement); *Silverstrand Investments v. AMAG Pharmaceuticals et al.*, No. 1:10-cv-10470 (NMG), ECF No. 24 (D. Mass Jul. 27, 2010) (AF&T as lead counsel settled the action following a successful appeal to the U.S. Court of Appeals for the First Circuit); *Utesch v. Lannett Company Inc.*, et al., No. 2:16-cv-05932 (WB), ECF No. 53 (E.D. Pa. Mar. 20, 2017) (AF&T serving as lead counsel in pending securities class action).  *See* Falabella Decl., Ex. C (AF&T Firm Resume).

Butler Curwood has extensive experience in this District. Butler Curwood's partners have litigated hundreds of cases in the U.S. District Court for the Eastern District of Virginia. The partners at Butler Curwood have successfully litigated numerous complex, multi-plaintiff and collective/class actions in the Eastern District of Virginia, Richmond Division. *See e.g., Rogers et al. v. City of Richmond*, 3:11cv620-HEH-DJN, *Greene et al. v. U.S. Postal Service*, 3:17cv26-REP, *Ewers et al. v. City of Petersburg*, 3:16cv29-HEH-RCY. Butler Curwood has also served as local counsel, working closely with lead counsel admitted in other jurisdictions, in complex, multi-plaintiff cases pending in the Eastern District of Virginia. *See e.g., Hall et al. v. Dominion Energy, Inc. et al.*, 3:18cv321-JAG, *Edwards et al. v. Optima Health Plan et al.*, 2:20cv192-RCY-LRL. Finally, the attorneys of Butler Curwood have experience serving in a liaison/local counsel role in financial litigation such as this matter. *See In re Altria Group, Inc. Derivative Litigation*, 3:20CV00772-DJN, 339 F.R.D. 42 (E.D. Va. 2021) (appointing Butler Curwood, PLC as liaison counsel), *In re Comscore, Inc. Virginia Shareholder Derivative Litigation*, CL-2016-9465 (Fairfax

Cir. Ct.). Butler Curwood's experience with this Court along with their depth in complex litigation and the local/liaison counsel experience all support appointment of Butler Curwood as local counsel.

## IV.    CONCLUSION

For the foregoing reasons, Detroit GRS respectfully requests that the Court: (i) appoint Detroit as Lead Plaintiff; and (ii) approve its selection AF&T as Lead Counsel and Butler Curwood as Local Counsel for the class.

DATED: July 18, 2022

**BUTLER CURWOOD PLC**

By: */s/ Paul M. Falabella*
Paul M. Falabella (VSB No. 81199)
Zev Antell (VSB No. 74634)
140 Virginia Street, Suite 302
Richmond, VA 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: paul@butlercurwood.com
         zev@butlercurwood.com

*Local Counsel for General Retirement System of the City of Detroit*

**ABRAHAM FRUCHTER & TWERSKY, LLP**
Mitchell M.Z. Twersky (*pro hace vice* to be filed)
Atara Twersky (*pro hace vice* to be filed)
Sean M. Handron-O'Brien (*pro hac vice* to be filed)
450 Seventh Avenue, 38th Floor
New York, NY  10123
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
MTwersky@aftlaw.com
ATwerslu@aftlaw.com
SHandronobrien@aftlaw.com

*Counsel for General Retirement System of the City of Detroit and Proposed Lead Counsel*

**VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.**
MICHAEL VANOVERBEKE
79 Alfred Street
Detroit, MI 48201
Telephone: (313) 578-1200
mvanoverbeke@vmtlaw.com

*Additional Counsel for General Retirement System
of the City of Detroit*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of July 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to counsel of record.

_/s/ Paul M. Falabella_
Paul M. Falabella (VSB No. 81199)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel: 804-648-4848
Fax: 804-237-0413
Email: paul@butlercurwood.com